Curia, per O’Neall, J.
In this case the claim of the plaintiff consists of two parts, first $286 90-100, his share of his father’s estate under his will, of which the defendant’s intestate was executor; second for $96 60, money found in the possession of - the intestate, at his death, belonging to the *68 plaintiff. That these are true and riglit claims have been f0und the jury; and there can be no doubt of their cor- / rectness, in this respect, when it is remembered, that in the sett;lement before the Ordinary, they were set down, as debts to be paid by the administrator of John, and a fund was left in his hands to do so ! — The first question which arises is could the legacy of $286 90-100 be recovered at law ? There can be no doubt, that if the case rested merely on the executor’s assent, it could not; there must be an express promise to pay a pecuniary legacy to give the Court of law jurisdiction. In such a case, the legacy becomes the consideration of the promise, and the action is on the promise, and not on the legacy. That the intestate John assented to the legacy is plain enough from his payments to others, in equali jure. At his death, however, it still rested as a legacy, a trust assented to, and which could, be enforced in Equity. But in February, 1842, the defendant, the administrator, chose to consider it as the debt of his father, it was so put,down, in the settlement, and by it the defendant' stated it was to be paid. The distri-butees of his father, who were present, and whose shares were ascertained by the settlement, left in his hands a sum sufficient to pay it, and the $96 60, by deducting the aggregate from the assets in his hands before distribution was effected. This was an admission of these sums as debts of the intestate, and a promise, both express and implied, to pay, and gives the Court jurisdiction. But it is not even necessary to notice this ground. For the plaintiff, on the proof of such facts, could say to the defendant, you, as administrator of your father, retained in your hands the money which he was bound to pay, and you are therefore liable as such administrator, for money had and received to my use. But it has been supposed, that this was an attempt to charge the administrator personally for the debt of his intestate, and to do so that it required a note, or memorandum in writing, under the statute of frauds. That however is altogether a mistake; he is charged as administrator, and his promise is only regarded as evidence of the debts ! As to the statute of limitations there is no ground to sustain it. The statute could not begin to run in favor of the defendant, until the settlement, in the Ordinary’s office, in February, 184?. For then he made the promise, on which this action is founded. From that time down to April, 1846, and possibly to October, 1848, the defendant admitted he, as administrator of his father, was indebted to the plaintiff, ■ and on one occasion declared he would suffer his neck veins cut before he would plead the statute of limitations. When the debt is barred, then to give the plaintiff a cause of action, there must be an explicit promise to pay, or a distinct admission of a subsisting debt, which the party is willing and liable to pay. But when the statute has not *69 run out, any admission is sufficient to prevent the statute from running. That is the case here.
The other matters involved in the case were facts properly submitted to the jury, and the Court is entirely satisfied with their verdict.
The motion for nonsuit or new trial is dismissed.
The whole Court concurred.

Motion refused.